UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| WENDELL LAVERGNE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| ORASURE TECHNOLOGIES, INC., | § | |
| ORLANDO A. FALVO and | § | |
| DONALD KEVIN GONSOULIN | § | |
| | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

COMPLAINT

Plaintiff, complaining of Defendants, Orasure Technologies, Inc. ("Defendant"), Orlando A. Falvo ("Falvo") and Donald Kevin Gonsoulin ("Gonsoulin") would show as follows:

Parties

1. Plaintiff is a black male.

2. Defendant is a legal entity which may be served with process through its registered agent for service of process in Texas, C T Corporation System, 1999 Bryan St., Ste. 900 Dallas, Texas 75201. Falvo may be served with process at 15 Red Oak Dr., Coatesville, Pennsylvania 19320. Gonsoulin may be served with process at 1004 Osprey Dr., Shreveport, Louisiana 71106.

Jurisdiction And Venue

3. Jurisdiction over Plaintiff's federal law claims under 42 U.S.C. §1981 and §1981a, and 2000e-1 et. seq. is conferred on this Court by 28 U.S.C. §1331. Supplemental jurisdiction over Plaintiff's Texas law claim is conferred on this Court by 28 3U.S.C. §1367.

4. Venue for all causes of action is appropriate in this District and Division pursuant to 28 U.S.C. §1391 because all of the events and omissions giving rise to Plaintiff's claims made in this Complaint took place within this District and Division.

Facts

5. Plaintiff, of the black race, was subjected to discrimination and retaliation by Defendant and Falvo, who supervised the sales teams at Defendant, the hospital team and the public health team. This included being terminated from Defendant's employment under the circumstances referred to in paragraphs 6 through 10.

6. Plaintiff began his employment with Defendant in June 2012 as a senior account manager on Defendant's hospital team, with the duties of a sales representative, of medical products in the nature diagnostic testing devices, including those for Hepatitus, HIV and Flu A & B sold by Plaintiff. Plaintiff was under the immediate supervision of multiple directors, including Gonsoulin, and the indirect supervision of Falvo through April 22, 2016, when he was terminated from employment with Defendant by Falvo. For most of the time during his employment by Defendant, among 10 total account managers and senior account managers on the hospital team under the indirect supervision of Falvo, he was the only black. The only other black account manager on the hospital team while Plaintiff was employed by Defendant, Ron Francois, was also subjected to discrimination on the basis of race but resigned rather than be terminated.

7. On March 7, 2014, Plaintiff was subjected to a performance improvement plan based on his being at less than quota, albeit at 97% of quota, ahead of other white account managers and senior account managers, during 2013, and notwithstanding that he performed at 129% of quota for the first quarter of 2014, with the closest performance of any other account manager for the first quarter of 2014 being 102% of quota. Nevertheless, on information and belief, no other white

account manager or senior account manager was subjected to a performance improvement plan. Only two other account managers on the hospital team were at or above quota, such that at least six of the account managers and senior account manager on that team indirectly supervised by Falvo were at less than 100% of quota for the same first quarter. When the performance improvement plan was imposed, Gonsoulin informed Plaintiff that he disagreed with it and was told to impose it by Falvo. Plaintiff refuted the performance improvement plan in writing in the body of the plan and otherwise, to the evident frustration and subsequent retaliatory response by Falvo. The refutation included that a factual premise on which the performance improvement plan was based was false and that, as of the date of the performance improvement plan, Plaintiff was at 101% of quota. The refutation also noted that, in 2013, it appeared that Plaintiff earned, but was not paid, approximately $60,000 in commissions. The pattern of denial of a portion of commissions due Plaintiff continued through 2016.

8. In connection with the performance improvement plan, Falvo imposed a list of unprecedented and untenable demands for Plaintiff to accomplish to be paid commissions he had earned in achieving 129% of quota for the first quarter of 2014. On information and belief, no other white account manager or senior account manager was subjected to such demands. Nevertheless, Plaintiff complied with such demands as of the end of 2014 by, among other things, achieving 109% of quota for the entire calendar year of 2014, dictating the expungement from his personnel record of the performance improvement plan and his being eligible for a Circle of Stars sales award. This included being ahead of quota for all three products of Defendant he was responsible for selling right, at percentages, respectively of 103%, 325% and 287%. Plaintiff was the only member of Defendant's hospital team to be ahead of quota for all three products during 2014. For 2014, Plaintiff received an outstanding performance rating, the highest possible rating.

9. From time to time before May 2014, Gonsoulin made racially derogatory remarks including "I don't eat black people food. Animals eat that" and made racially derogatory gestures, including making monkey noises contemporaneously with the quoted remark. Also, in late 2014, Falvo made a statement to Plaintiff that black men should not date white women, but should stay with their own kind.

10. Plaintiff, during 2015, continued to act as a senior account manager on the hospital team without any longer being on a performance improvement plan and achieved 99% of quota for the entire calendar year of 2015, second on the hospital team.

11. In January 2015, Falvo denied Plaintiff the highest sales award within Defendant's hospital team for the year 2014 only by manipulating sales and quota information and accorded the award instead to a white female, Tammy McMinniman. Plaintiff repeatedly complained about the manipulation to Falvo, which took the form of applying quotas applicable to other account managers and senior account managers to Plaintiff although the pertinent customer was not within his territory even though that was supposedly contrary to the method of setting and monitoring quotas of Defendant, presumably to the knowledge of his superiors.

12. Beginning in and after December 2015, Falvo harassed Plaintiff regarding expense reports, imposing disparate requirements upon him compared to white peers. Falvo also belittled and bullied him in front of other, white account managers and senior account managers during business plan presentations and at sales meetings in the presence of the senior vice president of sales and marketing, Tony Zezzo, his immediate superior.

13. In January 2016, Falvo promoted the white female to whom he had accorded the highest sales award within Defendant for the year 2014 to a director position instead of Plaintiff without posting her position and notwithstanding his knowing that Plaintiff was interested in the

position and notwithstanding that she had not previously been promoted to senior account manager, a supposed prerequisite for the position to which she was promoted and at a time when she was at only 73% of quota for the calendar year and actually last among account managers within the country on the hospital team.

14. In 2016, Plaintiff was entitled as of the of the first calendar quarter to accrued commissions of approximately $95,000 payable within 30 days. Plaintiff was not, however, paid the approximately $95,000 in commissions as of the end of the first quarter of 2016 to which he was entitled. His white peers were not similarly denied bonuses at that time.

15. As of April 22, 2016, based on his performance as senior account manager on the hospital team, Plaintiff had become entitled to commissions in the amount of no less than approximately $197,000. Plaintiff had been denied payment of commissions in that amount to which he had become entitled in 2013, 2014 and 2015 under circumstances in which his white peers had not been similarly denied bonuses.

16. Under the pretense of a conference call to discuss Plaintiff's accrued commissions of $292,000, Plaintiff's employment was terminated by Falvo on April 22, 2016 without any severance being offered or commissions due to him being paid. It was falsely claimed that he had falsified expense reports. In connection with his termination of employment, Plaintiff received a letter stating that he would receive payment for any accrued but unused paid time off hours and first quarter 2016 sales commissions due to him. He has not, however, received any such paid time off or commissions.

17. Plaintiff is not the only black employee of Defendant who has been subjected to discrimination.

18. As a result of the termination of his employment, Plaintiff has suffered a loss of income and benefits and compensatory damages. Plaintiff has also been required to incur attorney's fees and costs of court.

## Claims

19. For a first cause of action, Plaintiff would show that Defendant and Falvo deprived Plaintiff of his equal right to work because of race in violation of 42 U.S.C. §1981. Plaintiff is accordingly entitled to recover damages for back pay, front pay, other past and future pecuniary losses, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life and other non-pecuniary losses, and on account of the intentional or reckless nature of Defendant and Falvo's discrimination, punitive damages. Plaintiff is further entitled to recover attorneys' fees and costs of court.

20. For a second cause of action, Plaintiff would show that Defendant and Falvo subjected Plaintiff to retaliation based upon his complaints of race discrimination in violation of 42 U.S.C. §1981. Plaintiff is accordingly entitled to recover damages for back pay, front pay, other past and future pecuniary losses, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life and other non-pecuniary losses, and on account of the intentional or reckless nature of Defendant and Falvo's retaliation, punitive damages. Plaintiff is further entitled to recover attorneys' fees and costs of court.

21. For a third cause of action, Plaintiff would show that Defendant subjected him to discrimination on the ground of race in violation of 42 U.S.C. §2000e-1 et seq. Plaintiff is accordingly entitled to recover damages for back pay, front pay, other past and future pecuniary losses, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life and

other non-pecuniary losses, and on account of the intentional or reckless nature of Defendant's discrimination, punitive damages. Plaintiff is further entitled to recover attorneys' fees and costs of court.

22. For a fourth cause of action, Plaintiff would show that Defendant subjected Plaintiff to retaliation based upon his complaints of race in violation of 42 U.S.C. §2000 e-1 <u>et seq</u>. Plaintiff is accordingly entitled to recover damages for back pay, front pay, other past and future pecuniary losses, emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life and other non-pecuniary losses, and on account of the intentional or reckless nature of Defendant's retaliation, punitive damages. Plaintiff is further entitled to recover attorneys' fees and costs of court.

23. For a fifth cause of action, Plaintiff would show that Defendant failed to pay him accrued but unused paid time off hours and commissions to which he was entitled. Plaintiff is accordingly entitled to recover his actual damages, attorney's fees, prejudgment interest and costs of court.

24. Plaintiff demands a trial by jury.

WHEREFORE, Plaintiff prays that he be granted all relief to which he is entitled.

Respectfully submitted,

<u>/s/ Robert E. Goodman, Jr.</u>
Robert E. Goodman, Jr.
State Bar No.08158100
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, Texas 75204
(214) 969-9099 - Telephone
(214) 379-0823 - Facsimile

ATTORNEY FOR PLAINTIFF